APRIL L. HOLLINGSWORTH (Bar No. 9391)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 900 East
Salt Lake City, Utah 84105
Telephone: 801-415-9909
april@aprilhollingsworthlaw.com
Attorneys for Plaintiff

**OF COUNSEL** (*pro hac vice applications forthcoming*)
James A. Vagnini
Robert R. Barravecchio
Alexander M. White
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| RICKEY HUNTER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>AGILITY ENERGY, INC.; PERRY TAYLOR, individually and as officer, director, shareholder, and/or principal of AGILITY ENERGY, INC.; TODD HANSEN, individually and as officer, director, shareholder, and/or principal of AGILITY ENERGY, INC; JESSICA HANSEN, individually and as officer, director, shareholder, and/or principal of AGILITY ENERGY, INC; DILLION PING, individually and as officer, director, shareholder, and/or principal of AGILITY ENERGY, INC; and HEATHER STEWART, individually and as officer, director, shareholder, and/or principal of AGILITY ENERGY, INC.<br><br>    Defendants. | **COMPLAINT**<br><br>**(Jury Trial Demanded)**<br><br>Case No. 2:18-cv-00618-TS<br><br>Judge Ted Stewart |

Plaintiff RICKEY HUNTER ("Plaintiff Hunter") on behalf of himself and all others similarly situated, by and through his attorneys, HOLLINGSWORTH LAW OFFICE, LLC AND VALLI KANE & VAGNINI LLP, brings this action for damages and other legal and equitable relief from Defendants Agility Energy, Inc. ("Agility"); PERRY TAYLOR, individually and as officer, director, shareholder, and/or principal of AGILITY ENERGY, INC. ("Defendant Taylor"); TODD HANSEN, individually and as officer, director, shareholder, and/or principal of AGILITY ENERGY, INC. ("Defendant T. Hansen"); JESSICA HANSEN, individually and as officer, director, shareholder, and/or principal of AGILITY ENERGY, INC. ("Defendant J. Hansen"); DILLION PING, individually and as officer, director, shareholder, and/or principal of AGILITY ENERGY, INC. ("Defendant Ping"); and HEATHER STEWART, individually and as officer, director, shareholder, and/or principal of AGILITY ENERGY, INC. ("Defendant Stewart") (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. Defendants, who are headquartered in Sandy, Utah, are engaged in the petroleum industry throughout the United States, including Midland, Texas. Particularly, Defendants provide fracking proppants—sand or similar particulate material suspended in water or other fluid and used to keep fracking fissures open—to hydraulic fracking ("fracking") sites. Defendants are the self-proclaimed leader in fracking proppant distribution.

2. Defendants employed Plaintiff Hunter and those similarly situated as quality control managers (collectively, "QCM(s)"). QCMs were "blue collar" workers whose job duties

included, among other things: coordinating the sand at the fracking sites, transporting truck parts and fire extinguishers, changing the nipples on the sand containment units with a wrench, re-sealing hatches on the trucks, transporting the truck drivers, inspecting the hose hook ups, and signing billing tickets. Defendants implemented a pay scheme that failed to compensate QCMs the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek

3. Plaintiff Hunter brings this action on behalf of himself, and those similarly situated, as a result of Defendants' willful violation of federal and state wage and hour laws, as set forth herein.

4. First, Plaintiff Hunter brings this action, pursuant to 29 U.S.C. § 216(b), on behalf of a collective of persons who are and were employed by Defendants as quality control managers during the past three (3) years through the final date of the disposition of this action who not paid the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek and are entitled to recover: (i) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (ii) unpaid overtime, (iii) liquidated damages, (iv) interest, and (v) attorneys' fees and costs, pursuant to the FLSA and such other and further relief as this Court finds necessary and proper.

5. Second, in addition to the collective allegations, Plaintiff Hunter brings this action pursuant to the FLSA for his unlawful termination in retaliation for his complaints to Defendants regarding their failure to compensate him and other QCMs the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek and is entitled to recover: (i) back pay, (ii) liquidated damages, (iii) emotional damages, (iv)

attorneys' fees and costs, (v) interest, and (vi) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 29 U.S.C. §§ 201 *et seq*.

7. Venue is proper in this Court pursuant to 29 U.S.C. §§ 201 *et seq*., in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain facilities, conduct business and reside in this district.

## THE PARTIES

8. Plaintiff Hunter is a citizen of Texas and resides in El Paso, Texas.

9. At all relevant times, Plaintiff Hunter was an "employee" within the meaning of the FLSA.

10. Defendant Agility is incorporated under the laws of the state of Utah and has its principal place of business in Sandy, Utah.

11. Defendant Agility issues QCMs their paychecks from their headquarters.

12. Defendant Agility has at all relevant times been an "employer" covered by the FLSA

4

13.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Agility exceeds $500,000.00 and thus subjects Defendant Agility to the FLSA's overtime and minimum wage requirements.

14.     Upon information and belief, Defendant Agility is engaged in interstate commerce.  This independently subjects Defendant Agility to the overtime requirements of the FLSA.

15.     Defendant Taylor is the president and chief executive officer of Defendant Agility.

16.     Upon information and belief, Defendant Taylor's job duties include, among other things, overseeing and managing Defendant Agility's operations, financials, hiring, firing, and legal compliance.

17.     Upon information and belief, Defendant Taylor is a resident of Utah and resides within this judicial district.

18.     Defendant T. Hansen is the senior vice president of Defendant Agility.

19.     Upon information and belief, Defendant T. Hanson's job duties included, among other things, overseeing the operation of over ninety (90) of Defendant Agility's fracking crews, including Plaintiff Hunter's, on a daily basis.

20.     Upon information and belief, Defendant T. Hanson is a resident of Utah and resides and within this judicial district.

21.     Defendant J. Hansen is the vice president of risk management of Defendant Agility.

22.     Upon information and belief, Defendant J. Hansen's job duties included, among other things, monitoring and implementing legal compliance policies for Defendant Agility, which includes FLSA compliance.

23. Defendant Hansen completed the hiring process of Plaintiff Hunter. For example, Plaintiff Hunter was required to submit his hiring and benefit documents to her.

24. Upon information and belief, Defendant J. Hansen is a resident of Utah and resides within this judicial district.

25. Defendant Ping is the general manager of Defendant Agility.

26. Upon information and belief, Defendant Ping's job duties included, among other things, overseeing and managing Defendant Agility's employees at the various fracking sites.

27. Defendant Ping interviewed and hired Plaintiff Hunter.

28. Upon information and belief, Defendant Ping is a resident of Utah and resides within this judicial district.

29. Defendant Stewart is the account payables manager of Defendant Agility.

30. Upon information and belief, Defendant Stewart is responsible for, among other things, managing the Defendant Agility's accounts payable, which includes the QCMs' payroll.

31. When Plaintiff Hunter had an issue with his pay, he was required to contact Defendant Stewart for remediation.

32. Upon information and belief, Defendant Stewart is a resident of Utah and resides within this judicial district.

33. Defendants jointly employed Plaintiff Hunter and those similarly situated by employing or acting in the interest of the employer towards Plaintiff Hunter and those similarly situated directly or indirectly, jointly or severally, including without limitation, by controlling and directing the terms of employment and compensation, formulating and implementing policies, hiring and/or firing all those similarly situated employees, creating work schedules, and "suffering or permitting" all those similarly situated employees to work.

## STATEMENT OF FACTS

**I.     General Facts**

34.     Defendants are engaged in the petroleum industry. Particularly, they are a petroleum and fracking proppant distributor.

35.     Defendants are headquartered in Sandy, Utah, but operate at numerous fracking sites throughout the United States, including within the state of Texas and within this Judicial District.

36.     Defendants also maintain satellite offices near their fracking sites.

37.     QCMs operate out of the satellite offices, but report to both their satellite office and Defendants' headquarters.

38.     The satellite offices report directly to Defendants' headquarters.

39.     QCMs are required to contact Defendants' headquarters for trucking dispatch. Furthermore, QCMs constantly communicate employment-related issues with Defendants' headquarters via email and text message.

40.     Defendants employed Plaintiff Hunter and those similarly situated as quality control managers.

41.     Despite the title, QCMs are not administrative employees.

42.     QCMs are blue collar workers who performed repetitive operations outdoors with their hands.

43.     For example, QCMs primary duties are, among other things, coordinating the sand at the fracking sites, transporting truck parts and fire extinguishers, changing the nipples on the sand containment units with a wrench, re-sealing hatches on the trucks, transporting the truck drivers, inspecting the hose hook ups, and signing billing tickets.

7

44. Moreover, QCMs were prohibited from exercising their discretion and independent judgment on significant matters.

45. For example, QCMs were not permitted to discipline employees, even for safety violations such as being intoxicated while driving a truck.

46. QCM's were also not permitted to cure contaminated sand containers. Instead, they were only permitted to report these and other types of incidents to their field operations manager. Furthermore, QCMs did not have the power to hire or fire employees.

47. Defendants did not require an advanced degree or specialized academic training for employment as a quality control manager.

### A. Facts Pertaining to Defendants' Pay Scheme

48. QCMs work twelve (12) hour shifts.

49. QCMs are required to work twenty-two (22) days straight per month and have the remaining eight/nine (8/9) days off.

50. QCMs worked one (1) shift per workday.

51. If a QCM does not request the eight/nine (8/9) days off in advance, that QCM is required to work those days.

52. QCMs are paid semi-monthly.

53. Defendants issue QCMs their paychecks from their headquarters in Sandy, Utah.

54. Defendants state to QCMs that they are paid on a "salary" basis. However, it is a far more complex pay scheme.

55. QCMs are paid a flat rate of approximately $2,700.00 per paycheck if they work twenty-two (22) days straight per month.

56. If a QCM does not work twenty-two (22) days straight per month, they are only paid their pro-rata rate calculated based upon the amount of days worked, effectively paying QCMs on a shift rate basis. For example, if a QCM only works twenty (20) straight days in a month he is paid a recalculated rate based upon the twenty (20) shifts worked.

57. Additionally, QCMs are paid at a rate of approximately $230.00 per day when they work in excess of the twenty-two (22) days straight, effectively paying QCMs on a shift rate basis.

58. This additional pay of $230.00 per day worked in excess of twenty-two (22) is paid to QCMs as a "bonus."

59. Accordingly, despite Defendants' contention, QCMs are not compensated on a salary basis.

60. QCMs are not compensated on a fee basis.

61. Defendants pay scheme is a corporate policy.

62. Upon information and belief, Defendants' pay scheme policy was conceived at their corporate headquarters.

63. Defendants' pay scheme is implemented throughout its various fracking sites.

### B. Facts Pertaining to Defendants' FLSA Violations

64. Defendants do not maintain a formal system of recording the QCMs time.

65. QCMs work approximately three (3) weeks straight every month.

66. QCMs are required to work twelve (12) hour shifts.

67. On average, QCMs work approximately eighty-four (84) hours per workweek.

68. Despite working in excess of forty (40) hours per workweek, QCMs are only compensated in accordance with Defendants' unlawful compensation scheme.

9

69. QCMs are not paid the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

70. Defendants titled QCMs' pay basis as *salary* to knowingly skirt the overtime provisions of the FLSA.

71. Defendants titled QCMs as *managers* and their pay basis as *salary*, despite the fact that their duties do not qualify them as exempt, to knowingly skirt the statutory provisions of the FLSA.

72. Accordingly, QCMs are not exempt from the statutory provisions of the Fair Labor Standards Act because they primarily perform manual work, do not exercise discretion and independent judgment with respect to matters of significance, and they are not paid on a salary or fee basis.

**II. Facts Pertaining to Plaintiff Hunter**

73. Plaintiff Hunter re-alleges and incorporates by reference all allegations in all preceding paragraphs.

74. In October 2017, Plaintiff Hunter commenced his employment as a quality control manager for Defendants.

75. Plaintiff Hunter was employed out of Defendants' Midland, Texas satellite office.

76. Plaintiff Hunter worked at various fracking sites throughout Texas.

77. Plaintiff Hunter worked twelve (12) hours per workday and approximately eighty-four (84) hours per workweek.

78. Plaintiff Hunter was subject to Defendants' unlawful pay scheme.

79. In accordance with Defendants' pay scheme, if Plaintiff Hunter worked twenty-two (22) shifts per month he received two (2) semi-monthly checks equating to approximately

$2,700.00 per check. If he did not work the twenty-two (22) days, he was paid a prorated rate calculated upon the amount of shifts he worked that month. Plaintiff Hunter was also paid a "bonus" of $230.00 per day that he worked in excess of twenty-two (22) straight days per month.

80. Plaintiff Hunter was paid a shift rate of $230.00 per workday that he worked in excess of twenty-two/three (22) days per month.

81. Accordingly, Defendants did not pay Plaintiff Hunter the statutorily required rate of one-and-one-half (1½) times his hourly rate for all hours worked in excess of forty (40) per workweek.

82. Plaintiff Hunter was not paid on a salary or fee basis.

83. Plaintiff Hunter was not exempt from the statutory provisions of the FLSA because he primarily performed manual work, did not exercise discretion and independent judgment with respect to matters of significance, and he was not paid on a salary.

84. In December 2017, Plaintiff Hunter complained to Defendants' field operations manager, Javier Galvin ("Mr. Galvin"), that Defendants' pay scheme violated the FLSA by failing to pay him and the other QCMs the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

85. Mr. Galvin replied to Plaintiff Hunter that since he was "salaried" he couldn't get overtime. Furthermore, he stated that he would discuss it with management, but not to "hold [his] breath."

86. No remedial action was taken in response to Plaintiff Hunter's December 2017 complaint.

87. In February 2018, Plaintiff Hunter complained to another field operations supervisor, Elias Landeros ("Mr. Landeros") regarding Defendants' pay scheme violating the

FLSA by failing to pay him and the other QCMs the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek. Mr. Landeros agreed that the pay scheme was unfair and that he was going to discuss it with management.

88. No remedial action was taken in response to Plaintiff Hunter's February 2018 complaint.

89. On or around March 7, 2018, Plaintiff Hunter again complained to Mr. Landeros regarding Defendants' violations of the FLSA. This time, Mr. Landeros' response was that Defendant Ping and Defendants' Midland, Texas operations manager, stated to him that their pay scheme will remain in effect.

90. On or around March 14, 2018, Plaintiff Hunter backed his truck into another truck causing minor damage, which is a normal occurrence on fracking sites.

91. The following day, Plaintiff Hunter was written up and given a final warning by Defendant Ping.

92. Defendant Ping later called Plaintiff Hunter to terminate him.

93. At the time of his termination, Plaintiff Hunter had no prior write ups or pending disciplinary actions against him.

94. Notably, Defendants implement and maintain a policy of progressive discipline, requiring an employee to first be written up for a violation. If the violation occurs a second time, the employee is to be written up again and suspended. Finally, if the violation occurs a third time that employee may be terminated.

95. Accordingly, in terminating Plaintiff Hunter after his first offense, Defendants bypassed their own disciplinary policy and treated Plaintiff Hunter differently than similarly situated employees who did not complain about the failure to receive proper pay.

96. Plaintiff Hunter was terminated in retaliation for his complaints to Defendants of their violations of the FLSA's overtime provisions.

### FLSA COLLECTIVE ACTION ALLEGATIONS

**A. FLSA OVERTIME COLLECTIVE**

97. Plaintiff Hunter seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on his own behalf as well as those in the following collective:

> All quality control managers employed by Defendants during the past three (3) years through the final date of disposition of this action, who are or were required to work in excess of forty (40) hours per workweek without compensation at the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

98. At all relevant times, Plaintiff Hunter was similarly situated to all such individuals in the FLSA Overtime Collective[1] because, while employed by Defendants, Plaintiff Hunter and all FLSA Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, were required to work in excess of forty (40) hours per workweek and were subject to Defendants' policies and practices of willfully failing to pay them at the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

99. Defendants are and have been aware of the requirement to pay Plaintiff Hunter and the FLSA Plaintiffs at a rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek, yet willfully choose not to.

---

[1] Hereinafter referred to as the FLSA Plaintiffs.

13

100.	The FLSA Plaintiffs are readily discernable and ascertainable. All FLSA Plaintiffs' contact information is readily available in Defendants' records. Notice of this collective action can be made as soon as the Court determines it appropriate to do so.

101.	The number of FLSA Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

102.	All questions relating to Defendants' violation of the FLSA share a common factual basis as set forth herein. No claims under the FLSA relating to Defendants' failure to pay the statutorily required rate of one-and-one-half (1½) times the QCMs' hourly rate for all hours worked in excess of forty (40) per workweek are specific to Plaintiff Hunter, and the claims asserted by Plaintiff Hunter are typical of those of members of the collective.

103.	Plaintiff Hunter will fairly and adequately represent the interests of the collective and has no interests conflicting with the collective.

104.	A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

105.	Plaintiff Hunter's attorneys are familiar and have experience with collective and class action litigation, as well as employment and labor law litigation.

106.	The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual FLSA Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or contribution.

107.	The questions of law and fact are nearly identical for all FLSA Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial resolution of the claims

asserted on behalf of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, Made by Plaintiff Hunter on Behalf of All FLSA Plaintiffs**
**(Failure to Pay Overtime)**

108.   Plaintiff Hunter and the FLSA Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

109.   Throughout the period covered by the applicable statute of limitations, Plaintiff Hunter and other FLSA Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

110.   Defendants knowingly failed to pay Plaintiff Hunter and the FLSA Plaintiffs the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

111.   Defendants' conduct was willful and lasted for the duration of the relevant time periods.

112.   Defendants' conduct was in violation of the Fair Labor Standards Act.

### SECOND CAUSE OF ACTION
**Violation of The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.***
**(Retaliatory Discharge)**

113.   Plaintiff Hunter re-alleges and incorporates by reference all allegations in all preceding paragraphs.

114.   Plaintiff Hunter engaged in protected activity by complaining to Defendants that their conduct violated the FLSA by refusing to compensate him and other QCMs the statutorily

required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

115. In December 2017, February 2018, and on or around March 7, 2018, Plaintiff Hunter lodged these complaints to Defendants.

116. On March 22, 2018, Defendants terminated Plaintiff Hunter as a direct retaliatory result of his engagement in protected activities.

117. Defendants' conduct was in violation of their own policies and the Fair Labor Standards Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Hunter, on behalf of himself and all FLSA Plaintiffs employed by Defendants, demand judgment against Defendants as follows:

A. At the earliest possible time, Plaintiff Hunter should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the purported collective, defined herein. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

B. Designation of Plaintiff Hunter as representative of the FLSA Collective and Plaintiff Hunter's counsel as Class Counsel;

C. Equitable tolling of the FLSA statute of limitations as a result of Defendants' failure to post requisite notices under the FLSA;

D. Certification of this action as a Collective action pursuant to 29 U.S.C. § 216 for the purposes of the claims brought on behalf of all proposed FLSA collective members under the FLSA;

      E.      Demand a jury trial on these issues to determine liability and damages;

      F.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

      G.      A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

      H.      All damages which Plaintiff Hunter has sustained as a result of Defendants' conduct, including back pay, general and special damages for lost compensation and job benefits he would have received but for Defendants' unlawful retaliatory conduct, liquidated damages, attorney's fees, interest, and compensatory damages including for emotional distress humiliation, embarrassment, and anguish;

      I.      All damages which Plaintiff Hunter and all FLSA Plaintiffs have sustained as a result of Defendants' conduct, including back pay, liquidated damages, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

      J.      An award to Plaintiff Hunter and all FLSA Plaintiffs of pre-judgment interest at the highest level rate on all unpaid wages from the date such wages were earned and due;

      K.      An award to Plaintiff Hunter and all FLSA Plaintiffs representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

      L.      An award to Plaintiff Hunter and all FLSA Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties, including liquidated damages subject to proof;

M.     Awarding Plaintiff Hunter and all FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

N.     Pre-judgment and post-judgment interest, as provided by law; and

O.     Granting Plaintiff Hunter and all FLSA Plaintiffs other and further relief as this Court finds necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Hunter demands a trial by jury on all questions of fact raised by this complaint.

Dated: August 3, 2018

Respectfully submitted,

/s/April L. Hollingsworth
April Hollingsworth
Hollingsworth Law Office, LLC
1881 South 1100
East Salt Lake City, Utah 84105
T: (801) 415-9909
F: (801) 303-7324

**OF COUNSEL**

James A. Vagnini
(*pro hac vice applications forthcoming*)
Robert R. Barravecchio
(*pro hac vice applications forthcoming*)
Alexander M. White
(*pro hac vice applications forthcoming*)
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180
F: (516) 706-0248

**ATTORNEYS FOR PLAINTIFF**