IN THE UNITED STATES DISTRICT COURT
DISRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICKEY HUNTER; MARCOS MEZA; KENNETH NOLES; BRENT RILEY; and STEVEN STANDRIDGE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AGILITY ENERGY, INC.; PERRY TAYLOR; TODD HANSEN; JESSICA HANSEN; DILLION PING; and HEATHER STEWART, individually and as officers, directors, shareholders, and/or principals of AGILITY ENERGY, INC.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED JOINT MOTION TO DISMISS THE NON-EMPLOYER INDIVIDUALS<br><br>Case No. 2:18-CV-618 TS-PMW<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Renewed Joint Motion to Dismiss the Non-Employer Individuals named in Plaintiffs' Amended Complaint. For the reasons discussed below, the Court will grant the Motion in part and deny it in part. In doing so, the Court dismisses Defendants Perry Taylor, Todd Hansen, Jessica Hansen, and Heather Stewart from this case.

## I. BACKGROUND

The original complaint for this case was filed on August 3, 2018, by Plaintiff Ricky Hunter alleging violations of the Fair Labor Standards Act ("FLSA")[1] against Defendant Agility Energy, Inc. ("Agility") and the individually named Defendants.[2] Hunter amended his complaint

---

[1] 29 U.S.C. §§ 201 *et seq.*

[2] Docket No. 42, at 3.

on June 27, 2019, to include the named Plaintiffs to seek relief individually and for other similarly situated Quality Control Managers ("QCM" or "QCMs").[3]

Agility is a leading fracking proppant distribution company headquartered in Sandy, Utah, with worksites in various locations throughout the United States.[4] Agility has a large workforce in West Texas and the majority of Agility's Texas-based employees are QCMs who work at worksites in Midland County, Texas.[5] Agility employs QCMs to facilitate operations on oilfield sites, and their main duty is the supervision and management of all field employees and drivers at these sites.[6] Listed as managers, QCMs are paid on a salary basis.[7] However, Plaintiffs assert that the pay scheme is far more complex in that a QCM's final pay is in fact determined by the total number of days worked each month.[8] As a result, Plaintiffs claim that QCMs were not paid the statutorily required rate of one-and-a-half (1½) times their hourly rate for all hours worked in excess of forty (40) hours per work week.[9]

Plaintiffs argue that responsibility for this violation should extend to all named Defendants as employers because they jointly acted in the interest of Agility toward Plaintiffs by controlling and directing terms of employment and compensation, formulating and implementing policies, hiring and/or firing employees, creating work schedules, and "suffering all those similarly situated to work."[10] However, Defendants assert that Plaintiffs' Amended Complaint

---

[3] *Id.*
[4] *Id.*; Docket No. 39, at 7.
[5] Docket No. 42, at 3.
[6] *Id.*
[7] Docket No. 39, at 9.
[8] *Id.*
[9] *Id.* at 10.
[10] Docket No. 39, at 7.

lacks sufficient allegations against the individual Defendants to warrant cognizable FLSA claims against them and bring this Motion to Dismiss under Rule 12(b)(6) to dismiss those individuals from this case.[11]

## II. STANDARD OF REVIEW

The Supreme Court has established that in order to survive a Motion to Dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"[12] Under this standard, facial plausibility is achieved when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] In determining facial plausibility, the Court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient"[14] when the asserted "factual allegations are accepted as true."[15] As such, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."[16] "Nor [will] a complaint suffice if it tenders naked assertions devoid of further factual enhancement."[17]

---

[11] Docket No. 42, at 4.

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal citations and quotation marks omitted)).

[13] *Id.* at 678.

[14] *TecServe v. Stoneware, Inc.*, No. 2:08-CV-144-TS, 2008 WL 3166653, at *3 (D. Utah Aug. 5, 2008) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991)).

[15] *Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018) (citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

[16] *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555, 557).

[17] *Id.*

III. DISCUSSION

Under the FLSA, the term "employer" is defined broadly and includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."[18] Further, the term "employ" is expansively defined to mean "suffer or permit to work."[19] To date, there is no binding authority from the Supreme Court or Tenth Circuit that determines the application of these definitions to the issue of whether an individual can be held liable as an employer under the FLSA.[20] However, various other federal circuit and district courts have applied a test of "economic reality" to address this issue.[21] This test seeds from the "Supreme Court's instruction that the economic reality rather than technical concepts should govern in considering employment in the FLSA context."[22]

The "economic realities" test is a six-part test that seeks to address four inquiries as to whether an individual should be viewed as an employee or an independent contractor.[23] However, when applied to the issue of employer liability being placed on an individual, courts have departed from the six-part test. Instead, the economic realities test used focuses on four inquiries and the "totality of the circumstances" to determine if an individual exerts enough operational control that he or she should be liable as an employer.[24]

---

[18] 29 U.S.C. § 203(d); *see also Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998); *Jensen v. Redcliff Ascent, Inc.*, No. 2:13-CV-00275-TC-EJF, 2014 WL 2739297, at *3 (D. Utah June 17, 2014).

[19] 29 U.S.C. § 203(g); *see also Baker*, 137 F.3d at 1440; *Jensen*, No. 2:13-CV-00275-TC-EJF, 2014 WL 2739297, at *3.

[20] *Jensen*, 2014 WL 2739297, at *3.

[21] *Id.*

[22] *Id.*

[23] *Baker*, 137 F.3d at 1440.

[24] *See generally Jensen*, 2014 WL 2739297 (explaining each federal circuits approach to determining employer responsibility for individuals).

Therefore, in addressing the extent of operational control that an individual holds, courts consider: 1) an individual's power to hire and fire employees, 2) supervision or control of employee work schedules or conditions of employment, 3) whether an individual determines the rate and method of employee payment, and 4) whether an individual maintains employee records, among other factors.[25] In *Jensen v. Redcliff Ascent, Inc.*, Magistrate Judge Furse held that relying on the standard of operational control invites "inquiry into whether a potential defendant suffered or permitted employees to work"[26] and, therefore, a focus "on operational control provides a method, grounded in the economic realities of a company, for evaluating when individual liability may arise."[27] The Court will apply these factors to each individual Defendant named in Plaintiffs' Amended Complaint.

*A. Perry Taylor, President And Chief Executive Officer*

Taylor is the current President and Chief Executive Officer of Defendant Agility.[28] In Plaintiffs' Amended Complaint, they assert the following facts. As President and CEO, Taylor's job duties include overseeing and managing Agility's operations and financials, hiring and firing Quality Control Managers (QCM), setting QCM job duties, determining QCM's pay amount and basis, creating workplace policy, legal compliance, and maintaining employee records.[29]

Taking these allegations as true and in the light most favorable to the nonmoving party, Plaintiffs have not met the requirement of facial plausibility as required under Rule 12(b)(6). When applied to the economic realities test, the specified facts above are a direct example of a

---

[25] *Id.* at *2.

[26] *Id.* at *6.

[27] *Id.*

[28] Docket No. 39, at 5; Docket No. 47, at 5.

[29] Docket No. 39, at 5; Docket No. 47, at 5.

"formulaic recitation of the elements of the cause of action."[30] The elements listed above do little more than state that Taylor 1) has the power to hire and fire employees, 2) has supervision or control of employee work schedules or conditions of employment, 3) determines the rate and method of employee payment, and 4) maintains employee records. Although Taylor may very well participate in some or all of these roles, Plaintiffs' allegations against Taylor are "devoid of further factual enhancement."[31]

Plaintiffs also assert that Taylor, together with other potential Defendants, controlled the day-to-day operation of QCMs. This assertion includes that the named Defendants jointly employed Plaintiffs by controlling and directing the terms of employment and compensation, formulating and implementing policies, hiring and/or firing employees, creating work schedules, and suffering all QCM's and those similarly situated to work.[32] In support of these joint claims, Plaintiffs allege that Defendants jointly acted in not approving QCMs to take days off, knowingly skirted FLSA standards by labeling QCM's pay as salary and titling QCMs as managers, and failing to abide by Agility's standard of discipline for employee violations.[33] Although some courts have accepted factual allegations to be asserted against a group of defendants,[34] the finding of operational control requires the defendant to personally or directly

---

[30] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

[31] *Id.*

[32] Docket No. 39, at 7; Docket No. 47, at 5–6.

[33] Docket No. 47, at 6.

[34] *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983) (noting that defendants together had "operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and [ ] personally made decisions to continue operations despite financial adversity during the period of nonpayment.")

have involvement in "actual operations . . . that relate to a plaintiff's employment."[35] Unfortunately for Plaintiffs, the facts further alleged concerning the joint efforts of Defendants lack the factual enhancement to show that Taylor personally or directly had operational control over Plaintiffs in terms of their employment.

In a final effort to meet the standard of plausibility, Plaintiffs refer to various District Court cases that have held that "a corporate officer with operational control who is directly responsible for a failure to pay statutorily required wages is an employer . . . and is jointly and severally liable for the payment of the wages."[36] However, the alleged facts do not meet the standard of plausibility as to whether Taylor had operational control. Additionally, Plaintiffs fail to allege facts sufficient to show that Taylor, as a corporate official, was responsible for the alleged failure to pay wages. Therefore, Plaintiffs' assertions are not enough to establish plausibility on the essential elements to show that Taylor should be considered an employer and should be held jointly and severally liable under the FLSA standard.

---

[35] *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013); s*ee also Donovan*, 712 F.2d at 1511 (1st Cir. 1983) (noting that both appellants "were actively engaged in the management, supervision and oversight of Maxim Industries' affairs, including employee compensation and benefits."); *Wirtz v. Pure Ice Co.*, 322 F.2d 259, 263 (8th Cir. 1963) (explaining that although defendant "could have taken over and supervised the relationship between the corporation and its employees, had he decided to do so, [a] careful reading of the record … indicates that he did not do so," but rather "left compliance with the FLSA up to various managers at the business."); *Gray*, 673 F.3d at 357 (explaining that defendant "was simply not sufficiently involved in the operation of the club to be an employer.").

[36] Docket No. 47, at 6 (citing *Horne v. Scott's Concrete Contractor, LLC*, No. 12-CV-01445-WYD-KLM, 2013 WL 3713905 (D. Colo. Apr. 24, 2013), *report and recommendation adopted as modified*, No. 12-CV-01445-WYD-KLM, 2013 WL 3713653 (D. Colo. July 16, 2013)).

*B. Todd Hansen, Senior Vice President*

T. Hansen is the Senior Vice President of Agility.[37] Plaintiffs claim that T. Hansen, in his role as Senior Vice President, oversaw the operation of over ninety (90) fracking crews employed by Agility.[38] In addition, Plaintiffs allege the same general statements they did against Taylor, that T. Hansen jointly acted with the other Defendants as an employer under the economic realities test.[39] As a result of the allegations, Plaintiffs claim that T. Hansen 1) had the power to hire and fire employees, 2) had the power to control and supervise employee work schedules, and 3) had supervisory authority over them.[40]

In this pleading, Plaintiffs once again fail to meet the standard of facial plausibility as required by the Court for a Motion to Dismiss under Rule 12(b)(6). The allegations Plaintiffs make against T. Hansen are "naked assertions devoid of further factual enhancement."[41] Once again, it may be true that T. Hansen does in fact have the authority to make employment decisions and has supervisory control over the employees at Agility. However, the allegations give no further factual enhancement to give the Court an understanding of what overseeing the operations of Agilities fracking crews actually means and whether T. Hansen in fact had supervisory or operational control over the Plaintiffs' employment. As such, Plaintiffs fail to meet the standard required under Rule 12(b)(6).

---

[37] Docket No. 39, at 5; Docket No. 47, at 10.

[38] Docket No. 39, at 5; Docket No. 47, at 10.

[39] Docket No. 39, at 7; Docket No. 47, at 10.

[40] Docket No. 47, at 10.

[41] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557 (2007)).

*C. Jessica Hansen, Vice President Of Risk Management*

J. Hansen is the Vice President of Risk Management for Agility.[42] Plaintiffs plead that operational control is met based on the following allegations. First, that J. Hansen's job duties include monitoring legal compliance policies for Agility (including FLSA compliance), that she completed the hiring process for employees, and that she maintained employment documents.[43] Additionally, in connection with these listed job duties, Plaintiffs claim that Plaintiff Hunter was required to submit his employment documents to J. Hansen and that she completed the hiring process.[44] Finally, Plaintiffs include the same general allegations that Defendants jointly employed Plaintiffs and controlled salary and day-to-day operations.[45] Plaintiffs claim that the alleged facts above show that J. Hansen 1) had the power to hire and fire Plaintiffs, 2) had the power to control and supervise their work, 3) had supervisory power over them, and 4) had the power to set their rates and methods of pay.[46]

When viewed in a light most favorable to Plaintiffs, the listed allegations once again fail to point to individual or direct operational control. The additional facts alleged against J. Hansen give no further factual enhancement to the claim that she maintained employee records or that she directed the implementation and compliance of the FLSA. In other words, Plaintiffs are simply asserting conclusory statements and asking the Court to draw lines to the assumption that J. Hansen may have had operational control over Plaintiffs' employment. Again, J. Hansen's role certainly could have involved a direct or individual role in the actions alleged by Plaintiff.

---

[42] Docket No. 39, at 6; Docket No. 47, at 11.

[43] Docket No. 39, at 6; Docket No. 47, at 11–12.

[44] Docket No. 39, at 6; Docket No. 47, at 11.

[45] Docket No. 39, at 7; Docket No. 47, at 11–12.

[46] Docket No. 47, at 12.

However, it is not the Court's role to "weigh potential evidence that the parties might present at trial."[47] Additionally, similar to Taylor and T. Hansen, even when these facts are combined with the allegations that Defendants jointly acted as an employer, there is no facial plausibility that J. Hansen was personally involved in making decisions that would determine Plaintiff's pay structure and basis or the determination to list QCMs as managers within Agility.

*D. Dillion Ping, General Manager*

Ping is the General Manager at Agility.[48] Plaintiffs allege that Ping, as General Manager, oversees and manages QCMs at various fracking worksites, hires and fires QCMs, and makes the work schedules for QCMs.[49] However, as additional factual support, Plaintiffs also allege that Ping interviewed, hired, and fired Plaintiff Hunter and that, in response to a complaint from Plaintiffs, told Mr. Landeros (Plaintiff's Field Manager) that the QCM pay structure would not change.[50] In addition to these allegations, Plaintiffs also assert that Ping jointly acted with the other Defendants as an employer under the economic realities test.[51] As a result of these facts, Plaintiffs claim that Ping 1) has the power to hire and fire employees, 2) has supervision or control of employee work schedules or conditions of employment, 3) determines the rate and method of employee payment, and 4) maintains employee records.[52]

Based on the allegations that specifically apply to Ping, Plaintiffs have barely alleged sufficient facts to meet the required standard of plausibility. The Amended Complaint not only states facts that directly point to the power Ping had to hire and fire employees, but also imply

---

[47] *TecServe*, 2008 WL 3166653, at *3 (citing *Miller*, 948 F.2d at 1565).

[48] Docket No. 39, at 6; Docket No. 47, at 7.

[49] Docket No. 39, at 6; Docket No. 47, at 7.

[50] Docket No. 39, at 12; Docket No. 47, at 8.

[51] Docket No. 39, at 7; Docket No. 47, at 7–8.

[52] Docket No. 47, at 8.

that Ping had supervision or control over the employees' conditions of employment and rate and method of pay. When compared to the other named Defendants, the allegations against Ping show, at a minimum, the standard that must be met in order to cross the line from merely reciting elements of the cause of action to providing factual enhancement for facial plausibility.

*E. Heather Stewart, Accounts Payable Manager*

Stewart is the Accounts Payable Manager for Agility.[53] Plaintiffs allege that in her role as Accounts Payable Manager, Stewart managed and maintained Agility's accounts payable—including its payroll—and that issues regarding pay were to be reported to her for remediation.[54] Plaintiffs additionally allege, as with all other Defendants, that Stewart acted jointly in general allegations concerning operations of Agility's employees.[55] Plaintiffs claim that these facts, taken together and viewed in a light most favorable to their position, show that Stewart 1) had supervision or control of employee work schedules or conditions of employment, 2) determined the rate and method of employee payment, and 3) maintained employee records.[56]

Similar to Taylor, T. Hansen, and J. Hansen, Plaintiffs' listed allegations miss the target of plausibility of operational control under Rule 12(b)(6). Although the facts at hand do show that Stewart had some control over the process of payroll, Plaintiffs once again ask the Court to read between the lines to find plausibility of operational control. Plaintiffs claim that the duties of managing payroll and being responsible for remedying complaints concerning pay are sufficient to establish managerial control. While this may be true, taken in the light most favorable to Plaintiffs, these responsibilities do not reach the level of allegations necessary to

---

[53] Docket No. 39, at 6; Docket No. 47, at 13.
[54] Docket No. 39, at 6; Docket No. 47, at 13.
[55] Docket No. 39, at 6; Docket No. 47, at 13.
[56] Docket No. 47, at 14.

11

meet the requirement of operational control over Plaintiffs' employment. Given the allegations at hand, the Court could only assume Stewart's actual involvement in supervising the schedules or conditions of employment, determining the rate and method of pay, or maintaining employee records. As this is not the Court's role when faced with a Motion to Dismiss, and because these allegations lack further factual enhancement, the Court grants the Motion to Dismiss.

IV. CONCLUSION

It is therefore

ORDERED that Defendants' Renewed Joint Motion to Dismiss Non-Employer Individuals (Docket No. 42) is GRANTED in part and DENIED in part as set forth above.

DATED this 18th day of November, 2019.

BY THE COURT:

Ted Stewart
United States District Judge